## BENJAMIN B. MUSSEY *versus* MENZIES RAYNER.

The defendant signed a writing containing the following words : " To whom it may concern. The bearer, M. R., son of the subscriber, is about to establish a store in Portland, of books and stationery, and now goes on to Boston to obtain an assortment of stock for that purpose. He will commence on a limited scale with the intention of enlarging the business next spring. He wishes to purchase school books, &c. upon a credit of four or six months, and miscellaneous books, paper, &c. on commission. For the faithful management of the business and punctual fulfilment of contracts relating to it, the subscriber will hold himself responsible." It was *held*, that this was a contract of guaranty on the part of the defendant, and not an original undertaking ; and it *seems*, that it was not limited to a single purchase by the principal, but was a continuing guaranty, and embraced the general business of establishing a bookstore, and procuring additional supplies, either to keep the stock good or to enlarge it if occasion required.

The guarantor, in such case, is not liable upon his guaranty, unless he has had notice within a reasonable time, that it has been accepted and that credit has been given on the faith of it.

Thus, in an action upon such guaranty, it appeared that it was signed on the 4th of October, 1831, and that the plaintiff sold books to M. R. on the 12th of the same month, and also at various other times between that day and the 20th of February, 1834 ; but there was no evidence that any notice was given by the plaintiff to the guarantor, that the guaranty had been accepted, or that such sales had been made, or that M. R. was in arrears in his payments to the plaintiff, before July, 1834 ; nor was any claim made under the guaranty, before that time. It was *held*, that the reasonableness of the notice was to be determined with reference to the time of the original acceptance of the guaranty, and not to the time of the last sale to M. R. ; and that there had been an unreasonable delay in giving notice, which discharged the guarantor from liability, notwithstanding the accounts between the plaintiff and M. R. continued open during most of the period.

In the same action, it appeared, that, in July or August, 1834, the counsel for the plaintiff called on the guarantor for the purpose of obtaining a settlement of the plaintiff's claim, and endeavoured to induce him to settle it, or to give security, but was unable to obtain any thing except an order drawn by the guarantor upon a third person for a number of books. It was *held*, that this act was not in itself a recognition by the guarantor, of his liability, or a waiver of all objections arising from the laches of the plaintiff.

ASSUMPSIT. By an agreed statement of facts it appeared, that the plaintiff relied upon the following letter, dated on the 4th of October, 1831, and signed by the defendant : " To whom it may concern. The bearer, Menzies Rayner junior, son of the subscriber, is, with the advice of several gentlemen, Hon. J. C. Churchill, George Todd and others, about to establish a store in Portland, of books and stationery, and now goes on to Boston to obtain an assortment of stock for that purpose. He will commence on a limited scale, with the in-

tention of enlarging the business next spring. He wishes to purchase school books, &c. upon a credit of four or six months, and miscellaneous books, paper, &c. on commission. For the faithful management of the business and punctual fulfilment of contracts relating to it, the subscriber will hold himself responsible."

It was admitted, that this letter was brought to Boston on or about the 12th of October, 1831, and delivered to the plaintiff by M. Rayner junior ; and that, at that time, the plaintiff sold to him books and stationery, amounting to the sum of $251·67. It was further admitted, that during the three following years, the plaintiff sold other books and stationery to M. Rayner junior, the last transaction being on the 20th of February, 1834 ; that from time to time, during those years, M. Rayner junior made payments to the plaintiff, which were regularly credited to him in the plaintiff's books ; that these payments were to a larger amount than all the books and stationery furnished or sold to him by the plaintiff within six months from the 12th of October, 1831 ; but that there was still a balance due to the plaintiff, which was to be ascertained by an assessor under the direction of the Court, if they should be of opinion that this action could be maintained.

The deposition of M. Rayner junior, taken on the behalf of the defendant, was made a part of the case. In this deposition the witness stated, that in October, 1831, he purchased books and stationery of the plaintiff, which were charged to the witness, and paid for by him in a short time ; that subsequently he made other purchases of the plaintiff, and paid him therefor, in part, at different times, to the amount of about $1900 ; that during all the time, when he was so purchasing books, the plaintiff never informed him, that he considered the defendant liable on account of the witness, notwithstanding the witness was frequently unable to meet his demands for payments ; that the defendant had never intimated to the witness, that he had been called on by the plaintiff for the balance due, although the witness had frequently seen the plaintiff at the house of the defendant, both before and after the witness had failed to meet his payments ; that at the time when the witness obtained the letter above set forth, he considered it to be a letter of recommenda-

tion, he being a stranger to the plaintiff, and the defendant being acquainted with him ; that he supposed that this was the understanding of the plaintiff, because the plaintiff, after reading the letter, handed it back to the witness, and some time afterwards the witness voluntarily returned it to him ; that the defendant was never, in any way, interested in the store kept by the witness ; and that the purchases made of the plaintiff were made on condition, that the witness should return to him all the books not sold by the witness, and the books were considered as the property of the plaintiff, until they were so sold.

It was also admitted, that the counsel for the plaintiff went to Portland in July or August, 1834, at the request of the plaintiff, for the purpose of obtaining a settlement of the plaintiff's claim ; that he had a conversation with the defendant and M. Rayner junior, upon the subject of such claim, and endeavoured to induce them to settle it, or to give security ; and that he was unable to obtain any thing except an order drawn by the defendant, on Marsh, Capen & Lyon, of Boston, for a number of volumes of sermons, the value of which, if the action could be maintained, was to be ascertained by the assessor. This order was accepted, and the books were delivered to the plaintiff.

There was no evidence, that it was ever notified to the defendant, that M. Rayner junior was in arrears in his payments to the plaintiff, prior to July or August, 1834. Nor was there any evidence, that the plaintiff ever gave notice to the defendant, that the guaranty, or the proposal for a guaranty, contained in the letter, was accepted or received by the plaintiff, nor that the defendant was ever informed, that the plaintiff had sold books or stationery under or in reliance upon such letter, any further than the same is matter of legal presumption from the facts which were admitted in the case stated.

The plaintiff was to become nonsuit, or the defendant to be defaulted and the amount of damages ascertained by an assessor, according as the opinion of the Court should be upon the foregoing statement of facts.

The case was argued in writing.

*Brigham*, for the plaintiff. The letter in question was not a guaranty, but an original and unconditional promise to pay

whatever sum should become due to the plaintiff for books and stationery, from time to time delivered to the son of the defendant. The word " responsible," must be taken in its common acceptation, which means something more than the creation of a contingent liability. *Perley* v. *Spring*, 12 Mass. R. 297 ; *Duval* v. *Trask*, 12 Mass. R. 154 ; *Reed* v. *Nash*, 1 Wilson, 305 ; *Fisk* v. *Hutchinson*, 2 Wilson, 94. If this is the proper construction of the letter, then notice of its acceptance and of the sale of the goods, was not necessary.

But if it is to be regarded as a guaranty, then it was a continuing guaranty, and not limited to the first sale. Had it been the intention of the defendant to limit his liability to the first purchase made by his son, he would not have spoken of the intention of his son, to commence business on a limited scale and afterwards to enlarge it ; nor would he have used the word " contracts," or made himself *responsible for the faithful management of the business*. *Mason* v. *Pritchard*, 12 East, 227 ; *Merle* v. *Wells*, 2 Campb. 413 ; *Bastow* v. *Bennet*. 3 Campb 220 ; *Rapelye* v. *Bayley*, 5 Connect. R. 149 , *Sturgis* v. *Robbins*, 7 Mass. R. 301.

It is admitted, that if the defendant is a guarantor, he should have had notice of the acceptance of the guaranty, and of the amount of goods sold. But it is denied, that such notice was necessary prior to July or August, 1834, when notice was in fact given. At this time, the defendant did pay a part of the claim by giving an order on Marsh, Capen & Lyon ; and this act clearly shows, that the defendant then admitted his liability, and so far as he was then able, discharged it. After such a recognition of his liability it is too late to set up the defence, that he had not notice that the guaranty was accepted, and that he was to be held liable thereon.

In *Babcock* v. *Bryant*, 12 Pick. 133, it was pretty clearly held, that notice previous to the commencement of the action is all that is required, especially where, as in the present case, there is no change in the circumstances of the parties.

*W. J. Hubbard* and *Watts*, for the defendant, to the point, that the undertaking of the defendant was not original and unconditional, but merely collateral to the promise of his son, cited *Matson* v. *Wharam*, 2 T. R. 80 ; *Leonard* v. *Vredenburgh*, 8 Johns. R. 29 : *Babcock* v. *Bryant*, 12 Pick. 133 ;

*Rains* v. *Storry*, 3 Carr. & Payne, 130 ; *Forth* v. *Stanton*, 1 Saund. R. 210, note ; that the letter of the defendant did not contain a guaranty, but only a proposal for a guaranty, *Showell* v. *Knox*, 1 Devereux, 404 ; that if the undertaking of the defendant amounted to a guaranty, still it was not a continuing guaranty, but was limited to the first sale, *Rogers* v. *Warner*, 8 Johns. R. 119 ; *Melville* v. *Hayden*, 3 Barn. & Ald. 593 ; *Cremer* v. *Higginson*, 1 Mason, 336 ; *Russell* v. *Clark*, 7 Cranch, 69 ; that whether the guaranty was a continuing or a limited one, notice should have been given to the defendant, that it had been accepted, and of the amount of goods furnished under it, *M'Iver* v. *Richardson*, 1 Maule & Selw. 557 ; *Norton* v. *Eastman*, 4 Greenleaf, 521 ; *Tuckerman* v. *French*, 7 Greenleaf, 115 ; *Russell* v. *Clark*, 7 Cranch, 69 ; *Babcock* v. *Bryant*, 12 Pick. 133 ; *Cremer* v. *Higginson*, 1 Mason, 340 ; *Beekman* v. *Hale*, 17 Johns. R. 134 ; [See also *Adams* v. *Jones*, 12 Peters, 207 ; and *Reynolds* v. *Douglass*, 12 Peters, 497 ;] and as to the effect of the order drawn by the defendant on Marsh, Capen, & Lyon, *Barnaby* v. *Barnaby*, 2 Pick. 223 ; *Pembroke* v. *Duxbury*, 2 Pick. 199.

DEWEY, J. delivered the opinion of the Court. Upon the first question presented in this case there can be no doubt. The promise of the defendant was clearly a collateral undertaking for the debt of another. The principal debtor was Menzies Rayner junior, for the performance of whose promises the defendant, if liable at all, is liable upon the principles governing the contract of guaranty.

The next inquiry is, was this a continuing guaranty. The defendant insists, that upon this point a strict rule of construction should prevail, and that it ought to appear unequivocally, that it was the purpose of the defendant to guaranty the payment of debts contracted by M. Rayner junior, from time to time. Such a rule has often been stated by eminent jurists. 12 East, 227 ; 1 Mason, 336 ; 7 Cranch, 369. On the other hand, there are authorities countenancing the doctrine, that a liberal construction is to be given in such cases in favor of a person claiming rights under such a guaranty, and holding it to be the duty of the guarantor to limit his guaranty expressly to a single dealing, if he would avoid a further responsibility. Thus in

*Mussey*
*v.*
*Rayner.*

*June 29th*

Mussey
v.
Rayner.

the case of *Merle* v. *Wells*, 2 Campb. 413, where Lord *Ellenborough* says, "if a party means to be a surety only for a single dealing, he should take care to say so." Probably the better rule of construction would be that applied to other contracts, to give the instrument that effect which shall best accord with the intention of the parties as manifested by the terms of the guaranty, taken in connexion with the subject matter to which it relates, and neither enlarging the words beyond their natural import in favor of the creditor, nor restricting them in aid of the surety.

Upon a careful consideration of the terms of the letter of credit given in the present instance, the Court are strongly inclined to the opinion, that it was not limited to a single purchase or debt to be contracted by the principal debtor, but that it embraced within its object, the general business of establishing a bookstore, and procuring additional supplies by way of keeping the stock good, or enlarging it if occasion should require. The promise, after reciting the nature of the business in which the party was to engage, in its very terms stipulates "for the faithful management of the business and punctual fulfilment of contracts relating to it."

Assuming therefore the construction of the plaintiff to be correct as to the nature of this contract, and considering it to be a continuing guaranty, the further question arises as to the duties devolving upon the creditor who claims to have acquired rights under it. Is he to treat it as an ordinary guaranty of a promissory note, or other liability for a defined and specific amount already due to a party whose name is inserted in the contract ? Must there not be some evidence of acceptance of it, besides the mere act of a subsequent sale of goods to the person named in the letter of credit ?

The general rule of law on this subject seems now to be well settled, requiring that in cases of a written guaranty for a debt yet to be created and uncertain in its amount, the guarantor should have notice, in a reasonable time, that the guaranty is accepted, and that credit has been given upon the faith of it. This position seems to be recognized in *Norton* v. *Eastman*, 4 Greenleaf, 521 ; *Tuckerman* v. *French*, 7 Greenleaf, 115 ; *Babcock* v. *Bryant*, 12 Pick. 135 ; *Beek-*

*man* v. *Hale*, 17 Johns. R. 134 ; *Rapelye* v. *Bailey*, 3 Cowen, 438 ; *Cremer* v. *Higginson*, 1 Mason, 324.

The reasonableness of such a rule is peculiarly manifest in a case like the present, where the letter of credit is of the most general character, addressed to no particular individual, but "to all whom it may concern," and without limitation in amount or time of continuance, being in its form rather a proposition than a contract. In such a case the law requires, that due notice be given to the party, that the proposed guaranty has been acted upon and made the basis of credit to the person for whose accommodation it was drawn.

Upon recurring to the facts in the present case, it appears that the guaranty was executed on the 4th of October, 1831 ; that the plaintiff sold to M. Rayner junior, on the 12th of October, 1831, a quantity of books and stationery, and also at divers other times, between that day and the 20th of February, 1834 ; but there was no evidence of any notice from the plaintiff to the defendant, of any such sales, or of any acceptance of the guaranty, or any claim under it, before the month of July, 1834.

This, as it seems to the Court, was an unreasonable delay, and amounts to such laches on the part of the plaintiff as must discharge the defendant from any liability upon his guaranty. We do not think it a sufficient answer, that the accounts continued open during most of the period. The time in which the notice was required to have been given, is to be considered with reference to the period of the original acceptance of the guaranty, and not the time of the last sale to the principal debtor.

It is urged on the part of the plaintiff, that the defendant has recognized his liability, and virtually waived all objections arising from the laches of the plaintiff, by his act of drawing an order in favor of the plaintiff, on Marsh, Capen, & Lyon, of Boston, for a number of books, at the time when the plaintiff demanded payment of his account for goods sold M. Rayner junior. It does not however appear from the evidence reported upon that point, that the defendant did this under any acknowledgment of his liability as guarantor. It may have been under that supposition, and it may have been a merely

Mussey
*v.*
Rayner.

gratuitous act of liberality towards one, who had sustained a loss through the insolvency of his son. The character of the act is too equivocal to draw after it the consequences contended for by the plaintiff. It is also in evidence, that although at this time the plaintiff urged a settlement or the giving security for the entire debt, the defendant did not comply with the request. It is argued by the counsel for the plaintiff, that upon this point this case is clearly within the principles of the case of *Duval* v. *Trask,* 12 Mass. R. 154. It seems to the Court, that the acknowledgment of liability and promise to discharge the same, was more explicit in that case, than in the present ; and also, that the subsequent cases have rather restricted than extended the rule applied there.

The case before us must therefore be decided upon the general principles before alluded to, treating the proposed guaranty of the defendant as a collateral promise, requiring on the part of him who would avail himself of it, reasonable notice to the defendant of his acceptance of the guaranty, and that he had made advances upon the credit of it. No such notice having been given in the present case, within a reasonable time, the action cannot be supported.

*Plaintiff nonsuit.*